Leo L. Lowy v. Commissioner.
Lowy v. Commissioner
Docket No. 63613.
United States Tax Court
T.C. Memo 1960-32; 1960 Tax Ct. Memo LEXIS 254; 19 T.C.M. (CCH) 175; T.C.M. (RIA) 60032; February 29, 1960
Maurice V. Seligson, Esq., and Meyer I. Kleinberg, Esq., for the petitioner. John J. Madden, Esq., and Edward N. Delaney, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined deficiencies in the petitioner's income tax and additions to tax under section 293(b) of the Internal Revenue Code of 1939 as follows: Addition
Year
Deficiency
to Tax
1944
$333,911.49
$166,955.75
1945
203,538.01
101,769.01
Pursuant to an amended answer duly filed, the respondent claims a further deficiency *255 and addition to tax under section 293(b) for the year 1944 based upon his conclusion that a gain accrued to petitioner as the result of a corporate liquidation. The respondent concedes that there is no deficiency and no addition to tax due from petitioner with respect to 1945. The issues for decision are: (1) Whether any part of the deficiency for 1944 is due to fraud with intent to evade tax; and (2) Whether the petitioner realized a capital gain in 1944 upon the liquidation of American Rolbal Corporation and the transfer of the assets of that corporation to him. Findings of Fact Some of the facts are stipulated and are hereby found as stipulated. Petitioner, Leo L. Lowy, filed his individual income tax return for 1944 with the then collector of internal revenue for the first district of New York. The return was prepared on an accrual method of accounting and stated petitioner's residence to be Brooklyn, New York. During 1944, the petitioner was engaged in business as an individual in the manufacture and sale of airplane parts. The same business had been conducted in previous years by the American Rolbal Corporation, of which petitioner was the sole stockholder, president, *256 and treasurer. A certificate of dissolution of American Rolbal Corporation was filed on May 10, 1943, but the business was conducted by the corporation during the entire year 1943 and an income tax return for that entire year was filed by the corporation. On January 1, 1944, all the assets of American Rolbal Corporation were transferred to petitioner in return for his stock. Those assets had a fair market value on that date of $3,600,000 and the cost basis to petitioner of his stock in American Rolbal Corporation was $1,010,359. The petitioner reported a loss of $192,727.02 on his 1944 return. Petitioner did not report any gain arising from the transfer to him on January 1, 1944, of the assets of American Rolbal Corporation in exchange for the corporation's stock. Sales in the amount of $175,372.50 were made by the petitioner in November and December 1944 which were not included in the sales reported on petitioner's 1944 return. Additional sales in the amount of $24,161.24 were made by the petitioner in 1944 to Rieke Metal Products Corporation which were not reported on petitioner's 1944 return. In addition, the petitioner made sales of scrap in 1944 in the amount of $13,509.88 *257 which were not reported on petitioner's 1944 return. These scrap sales were made to Jacob Cohen and Jakob & Seligman. The checks issued by the purchasers of the scrap were made payable to petitioner. In 1944, the petitioner had interest income in the amount of $207.13 which was not reported on his 1944 return. During 1944, the proceeds of the sales of scrap in the amount of $13,509.88 were deposited in the following bank accounts of petitioner and/or his wife: Name of Bank
Account No.
Account Name
Deposited
Chase National Bank
Checking
Evelyn E. Lowy
$ 5,954.41
East River Savings Bank
74729
Joint Account
994.82
Corn Exchange Bank
Checking
Leo L. Lowy
3,581.02
Harlem Savings Bank
106,983
Joint Account
702.59
Central Savings Bank
252,812
Joint Account
11.04
Manhattan Savings Bank
4541
Joint Account
2,266.00
Total
$13,509.88
During 1944 there were maintained by the petitioner, in his own name or in various corporate names, the following bank accounts, in addition to those set forth above: Name of Bank
Name of Account
Bank of the Manhattan Company
American Rolbal Corporation
Manufacturers Trust Company
American Rolbal Corporation
Irving Trust Company
American Rolbal Corporation
Corn Exchange Bank & Trust Co.
American Ball Bearing Corp.
*258 The bank account maintained in the Corn Exchange Bank in the name of Leo L. Lowy was not reflected on the books and records maintained by him in 1944 nor were any of the other bank accounts enumerated above as the depositaries of the proceeds of the scrap sales totalling $13,509.88 reflected on such books and records. The bank account maintained in the Corn Exchange Bank & Trust Co. in the name of American Ball Bearing Corporation was not reflected on the books and records of petitioner for the calendar year 1944. Subsequently, in 1947, William B. Miller, an accountant retained by petitioner, made an entry with respect to this account in order to show a transfer of funds to it from the Irving Trust Co.
In February 1945, Morris Berger, a certified public accountant, was retained by petitioner to prepare petitioner's 1944 income tax return. Petitioner did not turn over to Berger, at the time Berger was preparing the return or prior to the filing of the return, any information relating to the bank accounts maintained in the name of petitioner and/or his wife into which there had been deposited the proceeds of scrap sales as set forth above. During 1944, the following checks were drawn *259 by petitioner to the order of Gustave B. Garfield, an attorney: June 1944
$ 755
June 1944
1,750
July 1944
2,000 The amounts of these checks were entered on petitioner's books in a column headed "Professional Services." A deduction in the amount of $2,934.68 was taken by the petitioner on his 1944 return as representing professional fees. The foregoing sums were paid to Garield under the following circumstances: A. The check in the sum of $755 was paid to Garfield for legal services; B. The check for $1,750 was paid in June 1944 to Garfield with instructions from petitioner to settle a suit pending against American Rolbal Corporation for some 20 years. The sum of $1,750 was disbursed by Garfield in settlement of this suit and petitioner was so advised; and C. The check in the sum of $2,000 was paid to Garfield on July 3, 1944. Out of this sum, Garfield paid $1,184.68 to the law firm of Wise, Sheppard, Hogan & Kelly, attorneys for Continental Bank and Trust Co. in settlement of a judgment against petitioner. The balance of $815.32 represented a fee payable to Garfield and to another attorney associated with him, Charles Trynan. At the time each of these *260 checks was given to Garfield, an entry was made in the books of petitioner recording such entry as legal fees payable to Gustave B. Garfield. This entry was made in this fashion because Rosa Stammreich, who made the entries in the books, knew that Garfield was an attorney and had seen either the check stubs or the checks and knew that the checks had been drawn to his order. The petitioner is entitled to net operating loss carrybacks from 1946 and 1947 in the respective amounts of $394,320.06 and $480,655.34. The petitioner is entitled to a deduction of $260,000 for depreciation in addition to that allowed in respondent's notice of deficiency for the calendar year 1944. Part of the deficiency due from petitioner for the calendar year 1944 is due to fraud with intent to evade tax, and the return filed by petitioner for that year was false and fraudulent with intent to evade tax. Opinion At the trial, evidence was introduced with respect to 1945 as well as 1944. However, as we have pointed out, the respondent has conceded that there is no deficiency and no fraud with respect to 1945. Therefore, since there is no issue before us involving 1945, we have limited our findings of *261 fact to the year 1944. The fact of the omission from petitioner's 1944 return of the various sales items and the interest item, as set forth in our findings, is conceded by petitioner, as is the correctness of the technical adjustments to his income in the amount of $46,072.23. The parties likewise have stipulated the cost basis of petitioner's stock in the American Rolbal Corporation, the fair market value of the assets received by petitioner in exchange for that stock, the amount of net operating loss carrybacks, and the additional allowance for depreciation. All of these matters are set forth in our findings. Assessment of any deficiency for the year 1944 is barred unless the return filed by the petitioner for that year was false and fraudulent with intent to evade tax. Section 276(a), 1939 Code. The burden is on respondent to prove that such was the case and that all or part of the deficiencies was due to fraud. We believe that the respondent has sustained this burden by clear and convincing evidence. The only items with respect to which the respondent has attempted to establish fraudulent intent are the omission of the scrap sales in the amount of $13,509.88, the omission *262 of the interest income in the amount of $207.13, and the deduction as legal fees of amounts paid Garfield to settle outstanding judgments. In his amended answer, the respondent claimed an additional deficiency and alleged fraud with respect to the gain determined by the respondent to have accrued to the petitioner upon the liquidation of the American Rolbal Corporation. At the trial, the respondent offered no evidence to establish fraud with respect to the failure to report that gain and stated that he would make no claim of fraud in that respect. The amounts paid to Garfield in 1944 totalled $4,505. Of that amount, $2,934.68 represented payments in settlement of judgments and $1,570.32 represented legal fees which were properly deductible. The petitioner deducted $2,934.68 of the total as legal fees. Garfield testified that he remonstrated with the bookkeeper, Stammreich, concerning the method by which the payments to him were entered on petitioner's books and that he also brought the matter directly to petitioner's attention. He testified that petitioner told him that the matter would be taken care of, but it was not. However, considering the entire record, including the testimony *263 of the bookkeeper, the respondent has failed to establish by clear and convincing evidence the existence of fraudulent intent with respect to the Garfield payments. On the other hand, the respondent has sustained his burden of proof with respect to the scrap sales. The fact of the sales in the amount of $13,509.88 is agreed, as well as the fact of the deposit of the entire proceeds in six different bank accounts maintained by the petitioner. It is conceded that none of the $13,509.88 was reported on petitioner's 1944 return. The record amply supports our finding that none of the bank accounts in which the proceeds of the scrap sales were deposited were reflected upon the books and records maintained by the petitioner in 1944. The petitioner argues on brief that he made a full disclosure with respect to those bank accounts to the accountant who prepared his 1944 return. However, the record affirmatively establishes otherwise. No disclosure was made to the accountant with respect to the 1944 scrap sales until at least the time when the accountant was working on the 1945 return. The record is not clear as to what disclosure, if any, he made at that time. In any event, the accountant *264 had no such information when he prepared the 1944 return. Petitioner has offered no explanation for his failure to disclose the scrap sales. We are satisfied from the entire record that the failure was a deliberate and fraudulent act intended to conceal the income in question and to evade tax. In view of our findings, the assessment of deficiencies for 1944 is not barred and the respondent's determination of additions to tax under section 293(b) is sustained. The loss carrybacks will not reduce the base for computing the 50 per cent addition to tax. P. C. and Ethel Petterson, 19 T.C. 486 (1952). We have found as a fact that all of the assets of American Rolbal Corporation were transferred to petitioner in return for his stock on January 1, 1944. The petitioner's own books so recorded that transfer. The certificates of dissolution had been filed in May of 1943 but the parties stipulated that the business continued to be operated by the corporation throughout that year. The parties have stipulated that the cost of petitioner's stock was $1,010,359 and that the fair market value of the assets received by him in exchange on January 1, 1944, was $3,600,000. Petitioner *265 realized a gain in 1944 with respect to the transfer measured by the difference between his cost and the fair market value on January 1, 1944. Section 111; section 115(c), 1939 Code. Decision will be entered under Rule 50.